*PTG for AUSA Saucedo*

# UNITED STATES DISTRICT COURT

for the

Southern District of California

**FILED**

SEP 1 5 2017

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) |
| | ) Case No. **'17MJ8986** |
| Apple iPhone 7S Cellular Telephone; | ) |
| Model: A1784; IMEI: 359218073333630; | ) |
| FCC ID: BCG-E3092A | ) |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A, incorporated herein by reference.

located in the _____ Southern _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B, incorporated herein by reference

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 21 USC 841, 846, 952, 960, 963 | Possession with intent to distribute controlled substance; Importation of a Controlled Substance; Conspiracy to commit same |

The application is based on these facts:

See attached Affidavit of Special Agent Elisha Mejia

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Special Agent Elisha Mejia, HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: **9-14-2017 @ 4:30 pm**

_____
*Judge's signature*

City and state: El Centro, CA

Hon. Peter C. Lewis, United States Magistrate Judge
*Printed name and title*

RTG for AUSA Saucedo

FILED

SEP 1 5 2017

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
DEPUTY

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF ) | Case Number: **17MJ8986** |
| ) | |
| (1)   Apple iPhone 7S Cellular Telephone ) | AFFIDAVIT OF SPECIAL |
|       Model: A1784 ) | AGENT ELISHA MEJIA |
|       IMEI: 359218073333630 ) | IN SUPPORT OF SEARCH |
|       FCC ID: BCG-E3092A ) | WARRANT |

## AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT

I, Special Agent Elisha Mejia, upon being duly sworn do hereby state that the following is true to my knowledge and belief:

## INTRODUCTION

1. I make this affidavit in support of an application for a search warrant in furtherance of a narcotics smuggling investigation conducted by the Department of Homeland Security ("DHS"), Homeland Security Investigations ("HSI") agents for the following target property seized from Luis Valenzuela-Aquino ("Valenzuela") on September 4, 2017.

(1)   Apple iPhone 7S Cellular Telephone
      Model: A1784
      IMEI: 359218073333630
      FCC ID: BCG-E3092A
      (hereinafter **"Target Telephone"**)

2. The **Target Telephone** was seized from VALENZUELA on September 4, 2017, at the time of his arrest. It is believed that the **Target Telephone** was used by VALENZUELA to communicate with conspirators during a drug

smuggling event involving methamphetamine in the Southern District of California, Case No. 17mj8933-PCL. Probable cause exists to believe that **Target Telephone** contains evidence relating to violations of Title 21, United States Code, Sections 841, 846, 952, 960, and 963. The specified telephone is currently in the possession of DHS, HSI, (ASAC) Calexico, California. Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth each and every fact that I or others have learned during the course of this investigation.

3. Based upon my experience and training, and all the facts and opinions set forth in this Affidavit, I submit this Affidavit in support of the application to search the **Target Telephone** for and to seize the items set forth in Attachment B (incorporated herein) which I believe will be found in the items to be searched as described in Attachment A (incorporated herein).

### EXPERIENCE AND TRAINING

4. I am a federal "Law Enforcement Officer of the United States" within the meaning of Title 18, United States Code, Section 2510(7), who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516. I have been a Special Agent (SA) with U.S. Homeland Security Investigations (HSI) since November of 2008. I am currently assigned to the HSI Assistant Special Agent in Charge (ASAC), Calexico, California Contraband Group 2. This group is tasked with investigating illegal narcotics trafficking organizations operating in, around, and through Imperial County, California. My primary duties involve the investigation of narcotics-related violations of Title 21 of United States Code and the California Health and Safety Code. I have received training in investigating various narcotics-related offenses, including the importation of narcotics and narcotics trafficking. I have also had

2

1  training in the methods used by controlled substance traffickers to import and
2  distribute drugs and to operate detailed distribution networks. My training has also
3  included the use of cellular and digital telephones and other electronic devices used
4  by narcotics traffickers in the normal course of their illicit activities. Since becoming
5  a SA, I have been involved in numerous narcotics trafficking investigations
6  involving the importation, distribution, and sale of large quantities of controlled
7  substances. I have also worked with other agents with extensive experience in
8  narcotics smuggling investigations.

9      5.    While I have participated in and conducted investigations of violations
10  of various state and federal criminal laws, including unlawful possession with intent
11  to distribute controlled substances, distribution of controlled substances, money
12  laundering, and conspiracy to import, possess and distribute controlled substances,
13  all in violation of Title 21, United States Code, Sections 841(a)(1), 843(b), 846,
14  952(a) and 963 and Title 18, United States Code, Sections 2, 1952, 1956 and 1957.
15  These investigations resulted in arrests of individuals who have imported, smuggled,
16  received and distributed controlled substances, including cocaine, marijuana, heroin,
17  and methamphetamine, and the arrest of individuals who have laundered proceeds
18  emanating from those illegal activities. Also, these investigations resulted in seizures
19  of illegal drugs, and proceeds of the distribution of those illegal drugs. Through these
20  investigations and training, I am familiar with the operations of illegal international
21  drug trafficking organizations in various parts of the world, including South America
22  and Central America. I have conducted investigations concerning the identification
23  of co-conspirators through the use of telephone records and bills, financial records,
24  drug ledgers, photographs, and other documents. I have also participated in the
25  debriefings of many of those individuals arrested who later cooperated with the
26  government. I have directed numerous confidential informants and cooperating

27

3

witnesses to successfully infiltrate various sized narcotics enterprises via intelligence gathering, participation in consensual recordings, and monitored purchases of controlled substances. I have executed search warrants for controlled substances, and I have conducted surveillance in connection with numerous narcotics investigations

6.      Through the course of my training, investigations, and conversations with other law enforcement personnel, I am aware that it is a common practice for narcotics smugglers to work in concert with other individuals. Through my training and experience, and through consulting with other law enforcement personnel, I am aware that individuals involved in smuggling narcotics may utilize cellular telephones, electronic mail, and social networking sites to coordinate with conspirators in order to further their criminal activities. These communications may include, but are not limited to, communications referring to smuggling arrangements, smuggling routes, payment, methods of smuggling, delivery locations, communications referring to the acquisition of vehicles and or individuals to drive those vehicles, photographs, videos, and communications containing the names and email addresses of conspirators. I am also aware that cellular telephones may contain these conversations as well as names, telephone numbers, addresses, and photographs of conspirators.

7.      Further, based on my training and experience, I also know that narcotics smuggling organizations depend upon maintaining their extensive contacts throughout the country. This is done to maintain contact concerning the sources of their narcotics and for marketing of said drugs. It is essential that professionally organized operations maintain contact with one another and utilize expedient means of communication. To do this, continued access to telephone communication is necessary. The use of telephones is essential in maintaining timely long distance and

1    local contacts with the original suppliers and those down the organizational chain to
2    the local traffickers. The telephone enables the professional drug dealer to maintain
3    contact with drug associates, drug suppliers, and drug customers. I am aware that
4    those involved in illegal drug operations often list their telephones, and cellular
5    telephones in the names of others to conceal their identities and illegal purposes. It
6    is likewise essential that such organized groups meet to formulate plans concerning
7    controlled substances or other illegal activities, and to divide their illegal proceeds.
8    I am also familiar with how drug traffickers speak to each other and generally
9    conduct business. For example, I am aware that drug traffickers often use telephones
10   to discuss, plan and coordinate drug distribution activities. This training and
11   experience forms the basis for my opinions expressed below

12        8.    The facts set forth in this affidavit are based on my own personal
13   knowledge; knowledge obtained from other individuals during my participation in
14   this investigation, including other law enforcement officers; interviews; my review
15   of documents related to this investigation; communications with others who have
16   personal knowledge of the events and circumstances described herein; conversations
17   with other agents experienced in controlled substance investigations, and
18   information gained through my training and experience. All the dates, times, and
19   amounts listed in this affidavit are approximate

20        9.    Based upon my training and experience as an SA, and consultations
21   with law enforcement officers experienced in narcotics smuggling investigations,
22   and all the facts and opinions set forth in this Affidavit, I submit the following:

23        a.    Drug smugglers will use cellular telephones because they are
24   mobile and they have instant access to telephone calls, text, web, and voice
25   messages.

26

27                                    5

1          b.      Drug smugglers will use cellular telephones because they are
2  able to actively monitor the progress of their illegal cargo while the conveyance is
3  in transit.

4          c.      Drug smugglers and their accomplices will use cellular
5  telephones because they can easily arrange and/or determine what time their illegal
6  cargo will arrive at predetermined locations.

7          d.      Drug smugglers will use cellular telephones to direct drivers to
8  synchronize an exact drop off and/or pick up time of their illegal cargo.

9          e.      Drug smugglers will use cellular telephones to notify or warn
10 their accomplices of law enforcement activity to include the presence and posture of
11 marked and unmarked units, as well as the operational status of checkpoints and
12 border crossings.

13 **PROBABLE CAUSE**

14     10.    On September 4, 2017, VALENZUELA was arrested at the Calexico,
15 California, West Port of Entry (POE), as he was attempting to enter the United
16 States, when U.S. Customs and Border Protection (CBP) officers discovered 22.08
17 Kilograms (48.576 pounds) of a mixture or substance containing a detectable amount
18 of methamphetamine concealed inside a non-factory compartment located in his
19 vehicle.

20     11.    Incident to VALENZUELA's arrest CBP officers seized the **Target**
21 **Telephone** from VALENZUELA.

22     12.    On September 4, 2017, I was notified of the methamphetamine seizure.
23 I arrived at the POE and made contact with VALENZUELA. During his post-arrest
24 interview, VALENZUELA identified the **Target Telephone** as belonging to him.
25 Further, VALENZUELA provided the password for the **Target Telephone**.

26

27 6

13. On September 5, 2017, VALENZUELA was charged by way of complaint with the importation of methamphetamine, in violation Title 21, United States Code, Section 952 and 960. On that same day, VALENZUELA was arraigned by the Hon. Peter C. Lewis, United States Magistrate Judge, in El Centro, California.

14. In my professional training, education, and experience, drug conspiracies require planning and coordination in the days, weeks, and months prior to the event. Additionally, co-conspirators are often unaware of the subject's arrest and will continue to attempt to communicate with the subject after the arrest to determine the whereabouts of their valuable cargo. Given this, I request permission to search **Target Telephone** for the period of July 4, 2017, up to and including September 4, 2017.

15. Based upon my experience and investigation in this case and in other cases, I am aware that narcotics traffickers and the organizations they work for often use cellular phones to organize their activities and that evidence of that use may often be found on their cellular phones. I also know that recent calls made and received, telephone numbers, contact names, electronic mail (email) addresses, appointment dates, text messages, pictures and other digital information are stored in the memory of cellular telephones which constitute evidence of narcotics trafficking and which tend to identify other persons involved in trafficking activities. Based upon my experience and training, consultation with other law enforcement officers experienced in narcotics investigations, and all the facts and opinions set forth in this affidavit, I believe that information relevant to the trafficking activities of VALENZUELA such as telephone numbers, made and received calls, contact names, electronic mail (email) addresses, appointment dates, messages, pictures and other digital information are probably stored in the memory of **Target Telephone** described herein.

7

1

## **METHODOLOGY**

2     16.    It is not possible to determine, merely by knowing the cellular
3 telephone's make, model, and serial number, the nature and types of services to
4 which the device is subscribed and the nature of the data stored on the device.
5 Cellular devices today can be simple cellular telephones and text message devices,
6 can include cameras, can serve as personal digital assistants and have functions such
7 as calendars and full address books, and can be mini-computers allowing for
8 electronic mail services, web services and rudimentary word processing. An
9 increasing number of cellular service providers now allow for their subscribers to
10 access their device over the internet and remotely destroy all of the data contained
11 on the device. For that reason, the device may only be powered in a secure
12 environment or, if possible, started in "flight mode" which disables access to the
13 network. Unlike typical computers, many cellular telephones do not have hard drives
14 or hard drive equivalents and store information in volatile memory within the device
15 or in memory cards inserted into the device. Current technology provides some
16 solutions for acquiring some of the data stored in some cellular telephone models
17 using forensic hardware and software. Even if some of the stored information on the
18 device may be acquired forensically, not all of the data subject to seizure may be so
19 acquired. For devices that are not subject to forensic data acquisition or that have
20 potentially relevant data stored that is not subject to such acquisition, the examiner
21 must inspect the device manually and record the process and the results using digital
22 photography. This process is time and labor intensive and may take weeks or longer.

23     17.    Following the issuance of this warrant, I will collect **Target Telephone**
24 and subject it to analysis. All forensic analysis of the data contained within the
25 telephone and its memory cards will employ search protocols directed exclusively
26 to the identification and extraction of data within the scope of this warrant.

27

8

18.     Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

## CONCLUSION

19.     Based on all of the facts and circumstances described above, I believe that probable cause exists to conclude that VALENZUELA used **Target Telephone** to facilitate the offense of importing methamphetamine Further, the **Target Telephone** was likely used to facilitate the offense by transmitting and storing data, which constitutes evidence, fruits, and instrumentalities of violations of Title 21, United States Code, Sections 841, 846, 952, 960, and 963. Therefore, I respectfully request that the Court issue a warrant authorizing me, a SA with HSI, or another federal law enforcement agent specially trained in digital evidence recovery, to search the items described in Attachment A, and seize the items listed in Attachment B.

Elisha Mejia, Special Agent
U.S. Homeland Security Investigations


Sworn to before me and subscribed in my presence
in El Centro, California this _14_ day of September, 2017.


The Hon. Peter C. Lewis
United States Magistrate Judge

9

## ATTACHMENT A

### PROPERTY TO BE SEARCHED

The property to be searched in connection with an investigation of violations of Title 21, United States Code, Sections 841, 846, 952, 960, and 963, is described below:

**Apple iPhone 7S Cellular Telephone**
**Model: A1784**
**IMEI: 359218073333630**
**FCC ID: BCG-E3092A**

currently in the possession of Department of Homeland Security, Homeland Security Investigations (ASAC), Calexico, California.

## ATTACHMENT B

### ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. The seizure and search of the cellular telephone will be conducted in accordance with the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, photographs, audio files, videos, and location data, for the period of: July 4, 2017 to September 4, 2017:

     a.    tending to identify attempts to import methamphetamine, or some other controlled substance from Mexico into the United States;

     b.    tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the smuggling of methamphetamine, or some other controlled substance from Mexico into the United States;

     c.    tending to identify co-conspirators, criminal associates, or others involved in smuggling methamphetamine, or some other controlled substance from Mexico into the United States;

     d.    tending to identify travel to or presence at locations involved in the smuggling of methamphetamine, or some other controlled substance from Mexico into the United States, such as stash houses, load houses, or delivery points;

     e.    tending to identify the user of, or persons with control over or access to, the subject telephone; and/or

     f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

**which are evidence of violations of Title 21, United States Code, Section 841, 846, 952, 960, and 963**.

The seizure and search of the cellular phone(s) shall follow the procedures outlined in the supporting affidavit. Deleted data, remnant data, slack space, and temporary and permanent files on the cellular phone(s) may be searched for the evidence above.